# 95 DTA 70

### TRIBUNAL DE CIRCUITO DE APELACIONES DE PUERTO RICO
### CIRCUITO REGIONAL DE CAGUAS/HUMACAO/GUAYAMA
### PANEL I

BANCO SANTANDER PUERTO RICO
Demandante - Apelado

v.

JULIO EDUARDO TORRES
Demandado - Apelante

Núm. KLAN-95-00142

San Juan, Puerto Rico, a 28 de abril de 1995

Panel integrado por su presidente, Juez Amadeo Murga
y los Jueces Pesante Martínez y Rivera Pérez

Amadeo Murga, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El demandado Julio Eduardo Torres apela una Sentencia Sumaria dictada por el Tribunal de Distrito, Sala de Caguas, el 2 de junio de 1994 condenándole a satisfacer a la parte demandante (Banco Santander Puerto Rico) una suma total en exceso de $20,000 por razón de una garantía emitida por él a favor del Banco. El caso estuvo en apelación ante el Tribunal Superior de Puerto Rico hasta que fue transferido a este Tribunal a tenor con la orden administrativa del Juez Presidente Núm. XIII de fecha 23 de enero de 1995.

Plantea el demandado que la ausencia de la firma de su esposa en la garantía, tiene la consecuencia jurídica de exonerarlo a él personalmente de la obligación asumida. Este y otros planteamientos procesales los consideramos inmeritorios por lo que confirmamos la sentencia. Los hechos materiales son los siguientes:

El 6 de mayo de 1991 Julio Eduardo Torres suscribió una Garantía Continúa sin Colateral a favor del Banco Santander Puerto Rico hasta la suma de $20,000 para inducir a éste *"hacer, de tiempo en tiempo, a opción de ustedes, préstamos·o adelantos a solicitud o por cuenta de Ramón Carpena Colón H/N/C Ramón Carpena Asociados"*. El 25 de junio siguiente, el Banco Santander prestó a Ramón Carpena Colón la suma de $9,000 dando éste como Garantía Colateral un certificado de ahorros de su propiedad por la suma de $10,000. El 13 de septiembre del mismo año el Banco prestó a Ramón Carpena otros $18,000 evidenciados por dos pagarés cada uno en la suma de $9,000 firmados por Carpena y su esposa Lydia A. Torres Rivera. Posteriormente, el 14 de enero de 1992 El Banco de Santander prestó Carpena otros $2,000 garantizados con el mismo certificado de depósito. El total de lo prestado a Carpena fue por lo tanto, $29,000. Posteriormente, en mayo 15 de 1992 Carpena y su esposa presentaron en el Tribunal Federal un procedimiento quiebra, número 92-03064, bajo el Capítulo 13 de la Ley Federal de Quiebras. El Banco de Santander presentó su reclamación en la quiebra y consignó como el total de la deuda de Carpena la suma de $27,338.35 de la cual, $9,075.58 era una deuda asegurada mediante un certificado de depósito.

El Banco dentro del procedimiento de quiebra, hizo una compensación aplicando el certificado de depósito de Carpena que el Banco tenía en su poder para cancelar la obligación de $2,000 de principal e intereses, tomada el 14 de enero de 1992 y la de uno de los pagarés que se encontraba reducida de $9,000 a $7,000 de principal más intereses. De esa manera, luego de hacer la compensación (set off) la deuda de Carpena con el Banco quedó reducida a $18,000 más intereses.

Con fecha 5 de noviembre de 1992 el Banco instó una demanda contra el garantizador

Julio Eduardo Torres reclamándole el pago de dos pagarés. Alegó que la deuda en relación con el primer pagaré ascendía a $9,000 de principal más $155.42 de intereses más intereses diarios así como $900 de costas y honorarios de abogados. Igualmente, reclamó $9,000 de principal por concepto del segundo pagaré y la suma de $107.35 de intereses acumulados más intereses diarios y $900 de costas y honorarios de abogados. La demanda se basó en la garantía emitida por Torres el 6 de mayo de 1991. Torres compareció por derecho propio negando por falta de información alegaciones sobre la deuda pero aceptando haber emitido la garantía. Con fecha 1 de diciembre 1992 el Banco enmendó la demanda para incluir además a la esposa de Torres, Nelsa López Colón y a la sociedad de gananciales compuesta por ambos.

Torres contestó la demanda enmendada por derecho propio y en representación de las otras partes demandadas alegando como defensa afirmativa que la obligación reclamada fue novada. Esta vez incluyó una demanda de terceros, contra los esposos Carpena-Torres. Luego compareció, representado por el Lcdo. José Gutiérrez Nuñez, solicitando la paralización de los procedimientos debido a que Carpena y su esposa se habían acogido al procedimiento de quiebra. El Banco se opuso a la paralización alegando de que la deuda suscrita por Carpena no era una de carácter de consumo por lo que no se aplicaba la paralización a tenor con la sección 1301 del Código Federal de Quiebras. Con fecha 23 de junio de 1993 el Tribunal declaró no ha lugar la solicitud de paralización de procedimientos presentada por Torres. El 15 de julio siguiente el Banco solicitó Sentencia Sumaria por las sumas que había reclamado en la demanda, o sea, $9,000 de principal más $155.42 de intereses hasta el 5 de junio de 1992 más intereses diarios por concepto del primer pagaré y $9,000 más $107.35 de intereses más intereses diarios por concepto del segundo pagaré. Se incluyó con la solicitud de sentencia sumaria una declaración del Gerente del Departamento de Cobro del Santander, Miguel A. Guindín, acreditando el balance de las obligaciones.

El 3 de septiembre de 1993 Torres se opuso a la solicitud de sentencia sumaria alegando que él, su esposa ni la sociedad de gananciales podían ser responsables ya que su esposa no había firmado la garantía. En cuanto a la cuantía reclamada, alegó que había una controversia en cuanto a la cuantía ya que en el foro federal el Banco había alegado que se adeudaba únicamente $8,375.95 ya que la parte demandante tenía en su poder un certificado de ahorro por la suma de $10,000 con el cual habían hecho una compensación por lo cual se desprendía que la suma reclamada en el presente caso era de $9,075.58. En efecto, en una Moción del 5 de marzo de 1993, el Banco había objetado el plan de quiebras de Carpena alegando que era tenedor de dos notas, una en la suma de $2,000 más intereses y otra en la suma de $9,000 más intereses.

El Banco contestó a su vez la oposición a la sentencia sumaria. En ésta se dirigió a la cuestión de la cuantía de la deuda. Indicó que la parte demandada estaba sacando de contexto los escritos presentados por el Banco en el Tribunal Federal e incluyó un Anejo que acreditaba la cuantía reclamada en el foro federal. De ahí se desprendía que lo reclamado en el foro federal era la suma de $27,338.35 y no $9,075.58 como expresaba la parte demandada. Del total reclamado $9,075.58 era asegurada y $18,262.77 no asegurada. Sostuvo que el Tribunal de Quiebra aprobó que hubiese una compensación en relación con el certificado de depósito de $10,000 que el Banco tenía en su poder quedando como deuda pendiente de pago el balance reclamado en el pleito.

Mediante Moción Informativa sobre Notificación de Documentos dirigida a la parte demandada, el Banco le informó de la existencia de dos pagarés expedidos con fecha 13 de septiembre de 1991 por Ramón Carpena, de un pagaré por la suma de $9,000 de 25 de junio de 1991 suscrito por Carpena y un último pagaré de $2,000 de 14 de febrero de 1992 suscrito por Carpena. Le informó asímismo sobre otra serie de documentos relacionados con la quiebra del Sr. Carpena.

El día 28 de marzo de 1994 se llevó a cabo una conferencia en cámara. De la minuta se recoge que el Lcdo. Cruz, en representación del Banco, indicó que quedaba pendiente el planteamiento del demandado sobre la cuantía adeudada. Indicó el Lcdo. Cruz que haría llegar al demandado el documento que reflejaba la obligación de los $7,000 aunque alegó que la cantidad adeudada surgía de la declaración jurada. El Tribunal le ordenó al abogado de la parte demandada que informara el estado de los procedimientos en cuanto al tercero demandado. El caso quedó sin señalamiento en espera que se sometieran los documentos antes mencionados. El Banco sometió los documentos mediante Moción del 5 de abril de 1994 en el que incluyó copia de dos pagarés por $9,000 cada uno de 13 de septiembre de 1991, pagaré de $9,000 de 25 de junio de 1991 garantizado con certificado de depósito y pagaré por la suma de $2,000 de fecha 14 de enero de 1992. Explicó asímismo que el Tribunal de Quiebra le había permitido una compensación (set off) del certificado de depósito de $10,000 para dejar pagada la obligación de $2,000 y de uno de los pagarés de $9,000 que en ese momento estaba reducido a $7,000. Hizo claro que los pagarés pendientes de pago eran dos 2 pagarés, cada uno por $9,000 de fecha 13 de septiembre de 1991 y solicitó que se dictara sentencia parcial contra la parte demandada por el monto de las cantidades reclamadas. Esta hizo una réplica a dicha moción informativa acompañada de documentos pero no contradijo la prueba del Banco limitándose a reproducir la reclamación que había hecho el Banco en el Tribunal de Quiebra por la suma total de $27,338.35.

El Banco a su vez, hizo una dúplica a la respuesta de la demandada alegando que en el Tribunal de Quiebra se había hecho una compensación (set off) en relación con el certificado de depósito. Que con dicha aplicación se cubrió la deuda evidenciada por un pagaré de $9,000 que en dicho momento se encontraba reducido a $7,000 y volvió a reclamar el total de los dos pagarés de $9,000 más sus intereses.

El Tribunal Apelado declaró con lugar la solicitud de Sentencia Sumaria en relación con los dos pagarés de septiembre 13 de 1991 más intereses en cuanto al co-demandado Julio Eduardo Torres. La desestimó en cuanto a su esposa y la Sociedad de Gananciales. Torres instó oportunamente su escrito de apelación. Luego de varios trámites, el recurso está ante nos listo para ser resuelto.

Procedemos a disponer de los señalamientos presentados por el apelante Torres en su alegato.

Señala como primer error que no procedía la Sentencia Sumaria a favor del Banco Santander y sí a su favor debido a que no había obligación alguna de su parte. Fundamenta su argumento con los Artículos 1308 y 1313 del Código Civil, 31 L.P.R.A. sec. 3661 y 3672 respectivamente, y los casos *W.R.C. Properties Inc. v. Santana,* 116 D.P.R. 127 (1985) y *Aguilú v. Sociedad de Gananciales,* 106 D.P.R. 652 (1977).

El Artículo 1313 establece la prohibición de enajenar o gravar a título oneroso los bienes que pertenecen a la sociedad de gananciales **sin el consentimiento escrito del otro cónyuge.** Torres sostiene que tal disposición *"no permite que uno de los dos cónyuges individualmente asuma cualquier obligación que no esté dentro de las excepciones taxativamente enumeradas, sin el consentimiento escrito del otro cónyuge,..."*. Torres pretende demasiado. La prohibición establecida por el Artículo 1313 es en cuanto a los bienes de la sociedad. No quedan incluidos en la prohibición los bienes particulares o privativos de los cónyuges. En cuanto a estos últimos los cónyuges tienen plena libertad de disposición. Como sabemos *"el régimen de gananciales prevaleciente reconoce, como axioma básico, el patrimonio individual de cada cónyuge separado del de la sociedad"* ■ y que las prohibiciones establecidas en cuanto a los bienes que pertenecen a la sociedad están dirigidas a proteger el patrimonio común de ésta sin que incidan en la libertad de disposición de los cónyuges para con sus bienes privativos. El caso de *Aguilú* declaró la nulidad de un acto mediante el cual se

pretendía enajenar **bienes gananciales** sin consentimiento de uno de los cónyuges a base de que se trataba de un acto de administración de los bienes de la sociedad (para lo cual no hay prohibición) y no un acto de disposición. La situación presentada ante nos es distinta pues no se efectuó un gravamen sobre bienes gananciales. Aquí el Tribunal adjudicó la responsabilidad personal de Torres y se exoneró de responsabilidad a la sociedad de gananciales.

El Artículo 1308 establece que las deudas y obligaciones contraídas por los cónyuges durante el matrimonio serán de cargo de la sociedad de gananciales. Según interpretada tal disposición en *W.R.C. Properties Inc.*, pág. 134, el texto del Artículo 1308 no establece sino la presunción de gananciabilidad de una deuda que haya servido un interés común de la familia. Una vez controvertida tal presunción, se permite la imposición de responsabilidad a la sociedad sólo subsidiariamente y previa excusión de los bienes del cónyuge deudor.

De igual modo se dijo que la interpretación de las disposiciones correspondían a *"un adecuado balance de intereses entre el principio de igualdad de los componentes de la entidad conyugal y el de seguridad y facilidad del tráfico comercial frente a terceros"*. Véase pág. 135. No obstante, se estableció en el caso que *"la protección del tráfico jurídico descansa en un estricto desconocimiento, bona fide, del status civil de la persona obligada"*. Además, que un grado mínimo de diligencia requiere del acreedor el *"deber jurídico insoslayable"* de inquirir al obligado sobre su estado civil para procurarse la protección adecuada. En virtud del cumplimiento de tal deber, consciente el acreedor de la existencia de una sociedad de gananciales, al aceptar la firma de uno sólo de los cónyuges *"limitó los términos de su garantía a la sola persona del cónyuge compareciente"* por cuanto sólo podía subsistir responsabilidad por la garantía en cuanto al cónyuge obligado.

El Tribunal Apelado en este caso impuso correctamente responsabilidad sólo a Torres conforme a lo resuelto en los anteriores casos.

Sostiene Torres en su segundo y tercero error que no procedía adjudicarse su responsabilidad por Sentencia Sumaria ya que estaban pendientes de entregarse ciertos documentos y que existía controversia en cuanto a la cuantía de la deuda. Los señalamientos no tienen mérito. En primer lugar, mediante Moción Informativa de 5 de abril el Banco volvió a informar sobre los documentos relativos al montante de la deuda haciendo nuevamente claro que reclamaba el pago de los dos pagarés del 13 de septiembre de 1991 ya que en cuanto a los pagarés de junio de 1991 y el de enero de 1992 se había pagado al efectuar una compensación (set off) con el pagaré de $10,000 que tenía en su poder. Torres jamás contradijo la existencia de la deuda por los dos pagarés. No había por lo tanto una controversia substancial de hechos sobre la cuantía de la deuda y procedía disponer del caso por Sentencia Sumaria. *Pilot Life Insurance Company v. Crespo,* **94 J.T.S. 104.**

Por último, señala Torres como error el que el Tribunal Apelado no hubiese decretado la paralización del caso hasta que se dispusiera del procedimiento de quiebra. Se ampara en su interpretación de la sección 1301 del Código de Quiebras (11 U.S.C.). Sin embargo, la paralización automática dispuesta en dicha sección está limitada a deudas de consumo. Como bien señala el Banco, la deuda del Sr. Carpena no es por una de consumo, según se define ésta en la sección 101(7) del Título 11 U.S.C., que las limita a deudas incurridas por un individuo para propósitos personales, familiares o del hogar. Correspondía a Torres probar que estos préstamos hechos a Carpena haciendo negocios como Carpena & Asociados, era no obstante, una de consumo, cosa que Torres nunca hizo.

Se confirma por lo tanto la sentencia apelada.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

María de la C. González Cruz
Secretaria General

**ESCOLIOS 95 DTA 70**

**1.** Durante el transcurso del pleito el Banco solicitó el aseguramiento de la sentencia mediante la presentación de una fianza de $40,000 y se le exigió a la parte demandada que prestara una fianza a su vez por $20,000 para dejar sin efecto el embargo.

**2.** *García v. Montero Saldaña,* 107 D.P.R. 319, 335 (1978 ).